**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:25-cv-03981-DDD-CYC

GERSON PEREZ RIVAS,

     Petitioner,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center;
DAVID VENTURELLA, Acting Director of U.S. Immigration and
    Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the U.S. Department of
    Homeland Security; and
TODD BLANCHE, Acting U.S. Attorney General,

     Respondents.[1]

---

**ORDER DENYING WRIT OF HABEAS CORPUS**

---

Petitioner Gerson Perez Rivas seeks a writ of habeas corpus directing his release from immigration detention. Doc. 1. For the following reasons, his petition is denied.

**BACKGROUND[2]**

The petitioner is a native and citizen of Venezuela. Doc. 1 at 4, 5; Doc. 8-1 at 2. On January 16, 2024, he presented at a U.S. port of entry pursuant to a scheduled appointment, and after inspection by Customs

---

[1]    To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2]    In this Order, pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

- 1 -

and Border Protection, he was found to be inadmissible and was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 1 at 4, 5, 30, 43; Doc. 8-1 at 2. That same day, the Department of Homeland Security issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229a and ordering the petitioner to appear in immigration court on February 4, 2027 to respond to the charges. Doc. 1 at 5, 15-18; Doc. 8-1 at 2-3. The Notice to Appear states that the petitioner is an "arriving alien." Doc. 1 at 15.

The petitioner's parole was granted through April 6, 2025. Doc. 1 at 6, 30, 43; Doc. 8-1 at 2. The petitioner applied for and was granted employment authorization from April 3, 2024 through January 14, 2026. Doc. 1 at 6. While on parole, the petitioner met his now-wife, who is a U.S. citizen. Doc. 1 at 5; Doc. 10 at 4. The petitioner worked with his mother-in-law at her bakery. Doc. 1 at 5.

On March 9, 2025, the petitioner was arrested in Montrose County, Colorado, for driving under the influence, careless driving, and possession of a controlled substance and drug paraphernalia.[3] Doc. 1 at 20-21. DHS subsequently detained the petitioner pursuant to 8 U.S.C. § 1225(b). Doc. 1 at 6, 20-21; Doc. 8 at 2; Doc. 8-1 at 3. The petitioner contends that DHS did not follow the procedures required to terminate his parole before detaining him. *See* Doc. 1 at 6-7, 25-27.

On May 12, 2025, the petitioner filed in immigration court a Form I-589 application for asylum and withholding of removal. Doc. 8-1 at 3. On September 15, 2025, the petitioner's wife filed with U.S. Citizenship and Immigration Services a Form I-130 petition to establish a qualifying relationship with the petitioner, and USCIS approved that petition in November 2025. Doc. 1 at 7, 51; Doc. 8-1 at 4. Thereafter, the

---

[3]    On October 14, 2025, the petitioner was convicted of driving while impaired, and the other charges were dismissed. Doc. 9-2 at 4.

petitioner filed with USCIS a Form I-485 application to register or adjust to Lawful Permanent Resident status. Doc. 1 at 7, 53-89; Doc. 8-1 at 4. On December 3, 2025, the petitioner filed in immigration court a motion to terminate his removal proceedings pursuant to 8 C.F.R. § 1003.18(d)(1)(ii)(B), which provides that an Immigration Judge may, in the exercise of discretion, terminate proceedings if the noncitizen is prima facie eligible for lawful status. Doc. 1 at 7, 47-49; Doc. 8-1 at 3. That motion was initially denied, but the IJ later reconsidered her decision, and on December 21, 2025, the IJ terminated the petitioner's proceedings. Doc. 1 at 7-8; Doc. 8-1 at 5; Doc. 9 at 2; Doc. 9-1 (IJ's order noting DHS can place petitioner back into removal proceedings if his LPR application is denied). DHS has appealed that decision to the Board of Immigration Appeals. Doc. 8-1 at 5; Doc. 9 at 2-3; Doc. 9-1. The petitioner remains in detention while the appeal is pending. Doc. 1 at 7-8; Doc. 8-1 at 5; Doc. 9 at 2-3.

USCIS has exclusive jurisdiction to adjudicate the petitioner's LPR application, and it can do so while DHS's appeal of the termination of removal proceedings proceeds in immigration court. Doc. 1 at 6 (citing 8 C.F.R. § 1245.2(a)(1)(ii)); Doc. 8-1 at 4. On December 2, 2025, however, USCIS issued Policy Memorandum 602-0192, which placed a hold on pending LPR applications for noncitizens from the countries designated in Presidential Proclamation 10949, including Venezuela. Doc. 1 at 7, 91-94. On December 31, 2025, USCIS sent the petitioner a Request for Evidence requiring the petitioner to submit a Form I-693 medical examination in order to complete his LPR application, but the respondents have refused to transport the petitioner to receive the required medical examination. Doc. 9 at 3, 6; Doc. 9-1 at 1; Doc. 9-3. The petitioner states that once his LPR application has been officially received by USCIS (which has not yet occurred), the estimated processing time is 9.5 months (if the application is not on hold). Doc. 1 at 10.

The petitioner contends that his continued detention violates the Fifth Amendment's Due Process Clause because: (1) DHS did not follow the required procedures to terminate his parole, Doc. 1 at 6-7, 25-27; Doc. 10 at 5; (2) his continued detention without the opportunity for a bond hearing has become unreasonably prolonged, punitive, and effectively indefinite in light of the USCIS hold on LPR applications from Venezuelan citizens, Doc. 1 at 10;[4] and (3) the respondents are improperly subjecting him to mandatory detention under 8 U.S.C. § 1225(b), Doc. 9 at 3-5; Doc. 10 at 2-4, 7-8.

## APPLICABLE LAW

### I.   Habeas Corpus

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533

---

[4]  The petitioner does not appear to argue that the hold imposed by Policy Memorandum 602-0192 is itself unlawful, so I express no opinion on that issue. *See, e.g.*, *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971 (D. Mass. Apr. 30, 2206) (preliminarily enjoining enforcement of Policy Memoranda 602-0192 and 602-0194 as to twenty-two plaintiffs), *modified by* slip op. (D. Mass. May 7, 2026), ECF No. 87 (extending injunction to 266 additional plaintiffs); Mot. for Prelim. Inj., *Ahmadi v. DHS*, No. 1:26-cv-01396-GPG (D. Colo. Apr. 21, 2026), ECF No. 7 (seeking to preliminarily enjoin same policy memoranda).

U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th
Cir. 2001).

## II.  Statutory Framework Governing Immigration Detention

While removal proceedings are being adjudicated, a noncitizen may
be detained pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226.
*See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018).

Section 1225 applies to "applicants for admission," which the statute
defines as an "alien present in the United States who has not been ad-
mitted or who arrives in the United States[, ]whether or not at a desig-
nated port of arrival."[5] 8 U.S.C. § 1225(a)(1). "Admitted" and "admis-
sion" mean "the lawful entry of [an] alien into the United States after
inspection and authorization by an immigration officer," 8 U.S.C.
§ 1101(a)(13)(A), not simply physical entry into the country. *See United
States v. Gaspar-Miguel*, 947 F.3d 632, 633-34 (10th Cir. 2020) (discuss-
ing history of INA and distinction between "entry" and "admission").

Under Section 1225(b)(1), applicants for admission "arriving in the
United States" and applicants for admission who have not been paroled
into the United States and have not been present in the country for at
least two years are subject to expedited removal proceedings if an immi-
gration officer determines they are inadmissible on certain grounds, and
they may be ordered removed "without further hearing or review" unless

---

[5]    The statutory phrase "alien . . . who arrives in the United States" is
broader than the regulatory definition of "arriving alien," which is "an
applicant for admission coming or attempting to come into the United
States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q); *In re Q. Li*, 29
I. & N. Dec. 66, 68 n.2 (B.I.A. 2025). The terms "alien" and "noncitizen"
are synonymous. *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing
8 U.S.C. § 1101(a)(3)).

they demonstrate a credible fear of persecution.[6] 8 U.S.C. § 1225(b)(1)(A)-(B); *see also Thuraissigiam*, 591 U.S. at 107-11. Applicants for admission in expedited removal proceedings are subject to mandatory detention while those proceedings are pending. 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV); *see also Jennings*, 583 U.S. at 302; *Thuraissigiam*, 591 U.S. at 111. Under Section 1225(b)(2), in the case of all other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," the alien is subject to mandatory detention during the pendency of standard removal proceedings under Section 1229a.[7] 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 287 (Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)"); 8 C.F.R. § 235.3(b)(1)(ii) ("An alien who was not inspected and admitted or paroled into the United States but who . . . has been . . . physically present in the United States for [two years] shall be detained in accordance with section [1225(b)(2)] for a proceeding under section [1229a].").

---

[6]   Those "arriving in the United States" are automatically subject to expedited removal if they are inadmissible on one of the specified grounds, while those who have been present in the United States for less than two years may be subject to expedited removal in the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1225(b)(1)(A)(i) & (iii)(I)-(II); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 109 & n.3 (2020); 6 U.S.C. §§ 251(2), 557; 8 C.F.R. § 235.3(b)(1)(ii). Not all noncitizens subject to expedited removal are in fact placed in such proceedings, and the government has discretion to place them in standard removal proceedings under 8 U.S.C. § 1229a even if expedited removal could be applied to them. *Flores v. Barr*, 934 F.3d 910, 917 (9th Cir. 2019) (citing *In re E-R-M*, 25 I. & N. Dec. 520, 521-22 (B.I.A. 2011)).

[7]   It is an open question whether the government violates Section 1225(b)(2)(A) if it does not detain applicants for admission that fall within its purview, or if this mandatory-detention provision "must be read in light of traditional principles of law enforcement discretion." *Biden v. Texas*, 597 U.S. 785, 803 n.5, 807 (2022).

Noncitizens subject to mandatory detention under Section 1225(b)(1) or (b)(2) may be released on "humanitarian" parole in the discretion of the Secretary of Homeland Security,[8] but they are not entitled to a bond hearing before an immigration judge. *See* 8 U.S.C. § 1182(d)(5)(A) (Secretary may "parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission"); *Biden v. Texas*, 597 U.S. at 806-07 (discussing humanitarian parole); *Jennings*, 583 U.S. at 297-98, 300 (no bond hearing).

Section 1226(a) applies to noncitizens arrested "[o]n a warrant,"[9] who may then be "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The group of noncitizens who may be arrested and detained under Section 1226(a) is not limited to applicants for admission. Noncitizens who have been admitted to the United States but are removable on various grounds—for

---

[8]    It is unsettled whether an applicant for admission who entered the country unlawfully is eligible for humanitarian parole. *Compare Texas v. DHS*, 756 F. Supp. 3d 310, 317-31, 353-57 (E.D. Tex. 2024) (discussing history of INA and parole "into the United States" and holding that noncitizens who enter unlawfully may not be "paroled in place" unless they fall within certain statutory exceptions), *with Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens*, INS Legal Op. No. 98-10, 1998 WL 1806685 (1998). Noncitizens who are released on humanitarian parole may be eligible for adjustment to lawful permanent resident status without the necessity of leaving the country, as well as certain other benefits. *See Texas v. DHS*, 756 F. Supp. 3d at 324-25.

[9]    Section 1226(a) "authorizes detention only '[o]n a warrant issued' . . . leading to the alien's arrest." *Jennings*, 583 U.S. at 302; *accord Nielsen v. Preap*, 586 U.S. 392, 410 (2019) ("the need for a warrant" is a procedural requirement for arrest under Section 1226(a)). But immigration officers are authorized to arrest "any alien in the United States" without a warrant if there is "reason to believe that the alien so arrested is in the United States in violation of [the immigration laws] and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

example, an alien who was admitted on a visa that has since been revoked, or a lawful permanent resident who is convicted of certain crimes—may be arrested under Section 1226(a) and placed in removal proceedings under Section 1229a. *See* 8 U.S.C. § 1227(a) (defining classes of admitted deportable aliens). Except for certain criminal aliens, noncitizens who are arrested and detained under Section 1226(a) are entitled to a bond hearing before an immigration judge and may be released on bond or "conditional" parole.[10]  8 U.S.C. § 1226(a) & (c); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also Jennings*, 583 U.S. at 306; *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 & n.2 (2021). Certain criminal aliens are subject to mandatory detention while their removal proceedings are pending and may not be released on bond, conditional parole, or humanitarian parole. 8 U.S.C. § 1226(a) & (c)(4).

## DISCUSSION[11]

### I.    The petitioner is subject to detention under Section 1225(b).

The issue of whether a noncitizen who has not been admitted to the United States but who has lived in the country for some appreciable

---

[10]  Conditional parole under Section 1226(a)(2)(B) does not confer the same benefits as humanitarian parole under Section 1182(d)(5)(A), such as eligibility for adjustment to lawful permanent resident status. *Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) (collecting cases); *Texas v. DHS*, 756 F. Supp. 3d at 355; *Singh v. Noem* (*Bachitar Singh*), No. CIV 25-1110 JB/KK, 2026 WL 146005, at *17 (D.N.M. Jan. 20, 2026) ("Conditional parole does not confer entry [and] does not alter an alien's status as an applicant for admission[.] . . . [It] is similar to bail in the criminal context."); *In re Castillo-Padilla*, 25 I. & N. Dec. 257 (B.I.A. 2010), *aff'd*, 417 F. App'x 888 (11th Cir. 2011). Only applicants for admission are eligible for humanitarian parole. *See* 8 U.S.C. § 1182(d)(5)(A) (Secretary may parole "any alien applying for admission").

[11]  Because the relevant facts are not in dispute and the petitioner's challenge to detention is fundamentally legal in nature, I have determined that a hearing is not necessary in this case.

amount of time is properly subject to mandatory detention under Section 1225(b) or may only be detained under Section 1226(a) (with the opportunity for release on bond or conditional parole) while his or her removal proceedings are pending is not a new one. The majority of district-court decisions addressing this issue have held that mandatory detention of noncitizens similar to the petitioner under Section 1225(b) is improper, but a notable minority of courts have reached the opposite conclusion. *See Singh v. Baltazar* (*Lovepreet Singh*), No. 1:26-cv-01076-DDD-TPO, 2026 WL 1282828, at *4 & nn.10-11 (D. Colo. May 11, 2026) (collecting cases). The circuit courts that have weighed in on the issue are likewise split. *Compare Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), *and Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026), *and Castañon-Nava v. DHS*, 157 F.4th 828 (7th Cir. 2026), *and Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *with Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), *and Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see also In re Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025) (holding all "applicants for admission" are subject to mandatory detention under Section 1225(b)).

The Tenth Circuit has yet to weigh in, and as I have previously explained, I am persuaded that the Fifth and Eighth Circuits and the minority of district courts holding that Section 1225(b)(2)(A) applies to "applicants for admission" in the petitioner's position have the better interpretation of the statutory text. *See Lovepreet Singh*, 2026 WL 1282828, at *3 to *5; *Melgar Hernandez v. Blanche*, No. 1:26-cv-00600-DDD-STV, slip op. at 8-12 (D. Colo. Apr. 29, 2026), ECF No. 13; *Valle-Rodriguez v. Hagan*, No. 1:26-cv-00609-DDD-CYC, slip op. at 8-14 (D. Colo. Apr. 22, 2026), ECF No. 11; *Singh v. Blanche* (*Gurmeet Singh*), No. 1:26-cv-00421-DDD-KAS, slip op. at 9-15 (D. Colo. Apr. 15, 2026), ECF No. 12; *see also Lopez-Campos*, 175 F.4th at 735-58 (Murphy, J., dissenting);

*Hernandez Alvarez*, 175 F.4th at 1285-1309 (Lagoa, J., dissenting); *Castañon-Nava*, 175 F.4th at 863-77 (Kirsch, J., dissenting). The petitioner is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). He is therefore an "applicant for admission" under Section 1225(a)(1). Because he is not in expedited removal proceedings and subject to mandatory detention under Section 1225(b)(1), the Section 1225(b)(2) "catchall provision" applies, and he is subject to mandatory detention under Section 1225(b)(2)(A). *See Lovepreet Sing*, 2026 WL 1282828, at \*5; *Melgar Hernandez*, slip op. at 11-12; *Valle-Rodriguez*, slip op. at 13-14; *Gurmeet Singh*, slip op. at 14-15.

The fact that the petitioner was previously released on humanitarian parole does not change this conclusion. The humanitarian parole statute provides that "parole of [an] alien shall not be regarded as an admission of the alien," and when, "in the opinion of the Secretary of Homeland Security,"

> the purposes of such parole . . . have been served[,] the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). When the petitioner presented himself to CBP at a port of entry, he was an "arriving alien," *i.e.*, "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q); *see also* Doc. 1 at 15 (Notice to Appear stating "You are an arriving alien."). "An arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked." 8 C.F.R. §§ 1.2, 1001.1(q). Accordingly, when the petitioner's parole was terminated, he "returned to his status of 'applicant for admission' or 'arriving alien' pursuant to statute." *Depelian v. Baltazar*, No. 1:25-cv-03765-SKC-TPO,

slip op. at 8 (D. Colo. Jan. 20, 2026), ECF No. 18. He was therefore properly "returned to the custody from which he was paroled," *i.e.*, detention under Section 1225(b), and his case must "continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A); *Depelian*, slip op. at 8-9; *accord Fuenmayor v. Mullin*, — F. Supp. 3d —, No. 1:26-cv-00622-MIS-LF, 2026 WL 963297, at *2 to *4 (D.N.M. Apr. 9, 2026) ("[U]nder § 1182(d)(5)(A), once the purpose of parole is complete, parolees revert to their previous status under §§ 1225(b)(1) or 1225(b)(2)." (citing *Jennings*, 583 U.S. at 287-88)); *Flores Diaz v. Mullin*, No. 2:26-cv-00639-KWR-JHR, 2026 WL 1481585, at *2 to *15 (D.N.M. May 27, 2026) (plain text of Section 1182(d)(5)(A) requires return to "the custody, including the accompanying legal status, from which a [noncitizen] was paroled"); *Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *10 to *13 (W.D. Ky. Apr. 6, 2026); *Arcos Tasigchana v. Soto*, No. 25-18252 (ZNQ), 2026 WL 266170, at *1 to *2 (D.N.J. Feb. 2, 2026); *De La Torre v. Lyons*, No. 1:25-cv-01516-DJC-CSK, 2025 WL 3704448, at *2 (E.D. Cal. Dec. 22, 2025); *Villanueva v. Chestnut*, No. 1:25-cv-01218-KES-HBK (HC), 2025 WL 2996559, at *3 to *4 (E.D. Cal. Oct. 24, 2025); *Q. Li*, 29 I. & N. Dec. at 70.

The petitioner is therefore not entitled to habeas relief on the basis that the respondents are unlawfully detaining him under Section 1225(b).

## II. Release is not an available remedy for the respondents' violation of parole-termination procedures.

The Due Process Clause does not provide applicants for admission like the petitioner a liberty interest in being released on parole as a matter of procedural due process. *Sierra*, 258 F.3d at 1218 & n.3 (citing *Ho v. Greene*, 204 F.3d 1045, 1060 & n.9 (10th Cir. 2000), *abrogated in part*

*on other grounds by Zadvydas*, 533 U.S. 678); *accord Thuraissigiam*, 591 U.S. at 139-40 (applicants for admission, "even those paroled elsewhere in the country for years pending removal," are "'treated' for due process purposes 'as if stopped at the border'" (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953))); *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1443 (5th Cir. 1993) ("Because petitioners' interests [under Section 1182(d)(5)(A)] are contingent upon the Attorney General's discretion, they have no liberty interest in being paroled."). The petitioner is "entitled only to the process Congress has conferred on him by statute." *Bonilla Espinoza v. Ceja*, No. 1:25-cv-01120-GPG, slip op. at 13-17 (D. Colo. May 21, 2025), ECF No. 11 (citing *Mezei*, 345 U.S. at 212; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Sierra*, 258 F.3d at 1218); *accord Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292-93 (10th Cir. 2001) (beyond basic right to "fundamental fairness" of removal proceedings, "any alleged liberty interest must be created by statute or regulation").

The humanitarian parole statute requires that parole be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The governing regulation provides that:

> (1) Automatic. Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized, and . . . the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or his designees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien . . . .

8 C.F.R. § 212.5(e)(1)-(2).

When the petitioner was taken into custody in March 2025, his parole had not expired, *see* Doc. 1 at 30, 43; Doc. 8-1 at 2, and he was not provided with written notice that his parole was terminated, *see* Doc. 1 at 26. It thus appears that the respondents did not follow the applicable regulatory procedure at that time. But the petitioner's parole subsequently expired on April 6, 2025, Doc. 1 at 30, 43; Doc. 8-1 at 2, 3, at which point it automatically terminated with no written notice required, 8 C.F.R. § 212.5(e)(1). And Immigration and Customs Enforcement served the petitioner with written notice of termination of his parole on February 26, 2026. Doc. 8-1 at 5; Doc. 8-2. The initial failure to provide the petitioner with written notice of termination of his parole has thus been cured, both through the automatic expiration of his parole without the need for written notice and by the respondents' providing him with written notice after he was detained. Accordingly, release "would do nothing to redress his harm" from the initial procedural violation "because he has ultimately received the process due him under the statutes that apply." *Depelian*, slip op. at 10-11; *accord Lovepreet Singh*, 2026 WL 1282828, at *7 ("[E]ven if the applicable procedures were not followed when the petitioner was re-detained, release is not an available habeas remedy when he is subject to mandatory detention under Section 1225(b)."); *Lin v. Almodovar*, No. 1:25-cv-9639-MKV, 2025 WL 3706626 (S.D.N.Y. Dec. 22, 2025); *Navdeep v. Warden ERO El Paso Camp E. Mont. Det. Ctr.*, No. EP-26-CV-829-KC, 2026 WL 1179624, at *1 to *2 (W.D. Tex. Apr. 23, 2026); *Rezaee v. President of the U.S.*, No. 6:25-cv-1140-CEM-DCI, 2025 WL 4051609, at *5 (M.D. Fla. July 29, 2025).

The petitioner is therefore not entitled to habeas relief on the basis that his detention violates his procedural due-process rights.

### III. The petitioner's continued detention does not violate substantive due process.

As I and other courts have previously explained, mandatory detention under Section 1225(b) or 1226(c) during the pendency of removal proceedings does not violate noncitizens' substantive due-process rights, absent some unreasonable delay by the government in pursuing and completing those proceedings. *See Lovepreet Singh*, 2026 WL 1282828, at \*5; *Argueta Andrade v. Baltazar*, No. 1:25-cv-01983-DDD-TPO, slip op. at 4-6 & n.3 (D. Colo. June 2, 2026) (collecting cases); *Melgar Hernandez*, slip op. at 12; *Valle-Rodriguez*, slip op. at 14-15 & n.14 (collecting cases); *Gurmeet Singh*, slip op. at 15-16 & n.12 (same).

The petitioner here has been detained for approximately fifteen months. The IJ ordered termination of his removal proceedings in December 2025. The petitioner has not demonstrated there were any unreasonable delays in the proceedings before the IJ or that there have been any unreasonable delays in the pending appeal before the BIA.[12] *See, e.g., Banyee v. Garland*, 115 F.4th 928, 934 (8th Cir. 2024) ("back-and-forth rulings, plus general administrative backlogs, [which] were to blame for [the petitioner's] lengthy detention" did not "turn otherwise legal detention into unconstitutional punishment"); *Giraldo Nieto v. Ceja*, No. 1:24-cv 02821 -DDD-NRN, 2025 WL 4087626, at \*7 to \*9

---

[12]  That the respondents allegedly have refused to allow the petitioner to obtain the medical examination required to complete his LPR application while he is in detention is troubling. But that application is proceeding before USCIS on a separate track from his removal proceedings in immigration court, and it is the removal proceedings that provide the basis for the petitioner's detention. There is no indication in the record that the respondents have unreasonably delayed those proceedings, and the petitioner has provided no authority to support the proposition that release is an appropriate remedy for ICE's purported violation of its policies and procedures regarding transportation of detainees to obtain such examinations. *See* Doc. 9 at 6.

(D. Colo. June 12, 2025) (thirty-two-month detention under Section 1225(b) did not violate substantive due process); *Gonzalez Aguilar v. McAleenan* (*Gonzalez Aguilar I*), No. 19-cv-0412 WJ/SMV, 2019 WL 5864821, at *11 (D.N.M. Nov. 8, 2019) (R. & R.) (petitioner not likely to succeed on substantive due-process claim based on twenty-seven-month detention under Section 1225(b)), *adopted sub nom. Gonzalez Aguilar v. Wolf* (*Gonzalez Aguilar II*), 448 F. Supp. 3d 1202 (D.N.M. 2020); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 127-28 (W.D.N.Y. 2021) (over thirty-two-month detention under Section 1225(b) did not violate substantive due process).

The petitioner is therefore not entitled to habeas relief on the basis that detention violates his substantive due-process rights.

## CONCLUSION

It is **ORDERED** that:

The Court's Order to Show Cause, Doc. 6, is **DISCHARGED**, and the Verified Petition for Habeas Corpus, **Doc. 1**, is **DENIED** and **DISMISSED WITHOUT PREJUDICE**;

Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction, **Doc. 10**, is **DENIED AS MOOT**;

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to: (1) substitute David Venturella, Acting Director of U.S. Immigration and Customs Enforcement, in place of Respondent Todd Lyons; (2) substitute Markwayne Mullin, Secretary of the U.S. Department of Homeland Security, in place of Respondent Kristi Noem; and (3) substitute Todd Blanche, Acting U.S. Attorney General, in place of Respondent Pam Bondi; and

The Clerk of Court is **FURTHER DIRECTED** to enter final judgment and close this case.

DATED: June 15, 2026                    BY THE COURT:

_____
Daniel D. Domenico
Chief United States District Judge